# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# EASTERN DIVISION

**CARDINAL HEALTH 110, INC., et al.**                                          **PLAINTIFFS**

**V.**                                                    **CIVIL ACTION NO. 1:08-CV-67-SA-JAD**

**SMITHVILLE PHARMACY, INC., et al.**                                          **DEFENDANTS**

## MEMORANDUM OPINION

Before the court is the Plaintiffs' motion for summary judgment [28] against the Defendants. The court has reviewed the parties' briefs and supporting documentation, and the Plaintiffs' motion for summary judgment is granted.

## I. BACKGROUND

On April 7, 2008, the Plaintiffs - Cardinal Health 110, Inc. (Cardinal 110) and Cardinal Health 113, L.L.C. (Cardinal 113) - filed their complaint against the Defendants - Smithville Pharmacy, Inc. (Smithville) and S. Phillip Carson. Cardinal 110 and Cardinal 113 are subsidiaries of Cardinal Health, Inc. (CHI), and Cardinal 113 was formerly known as Cardinal Health DDPSE, L.L.C. and Dohmen Distribution Partners Southeast, L.L.C. (Dohmen).[1] Cardinal's factual allegations are virtually undisputed by the Defendants. This is an action on an open account, and the only factual dispute regards the amount of the debt.

Smithville began ordering pharmaceutical products on credit from Dohmen in March, 2006. Cardinal alleges that as of September 29, 2006, Smithville's outstanding obligations to Dohmen totaled $127,372.72. In December, 2006, Cardinal 110 began supplying Smithville with pharmaceutical products - again, on credit. Cardinal alleges that as of January 23, 2007,

---

[1] The Plaintiffs shall be collectively referred to as "Cardinal" throughout this opinion.

Smithville's outstanding obligations to Cardinal 110 totaled $145,422.36.

On or about February 8, 2007, Cardinal discussed the past due balances with Smithville's president, Carson. Carson proposed an installment plan to pay down the balances and agreed to grant Cardinal a personal guaranty on Smithville's debt.

On March 16, 2007, Smithville, through Carson, its president, executed a "Credit Application and Agreement" with Cardinal. The agreement stated that Cardinal may assess a "service charge" at the rate of 1.5% per month on any amount not paid by Smithville. The agreement further stated that, upon default, Cardinal could declare all invoices immediately due and payable, and that Smithville would pay all expenses, including attorneys' fees, incurred by Cardinal to collect any amount due under the agreement. Finally, Smithville granted Cardinal a security interest in a variety of forms of property, both tangible and intangible, to secure all of Smithville's obligations to Cardinal, whether existing at the time the agreement was executed or arising thereafter. On March 17, 2007, Carson executed a personal guaranty, in which he jointly and severally guaranteed the payment of Smithville's obligations to Cardinal.

Smithville and Cardinal continued to do business, but neither Smithville nor Carson made any payments to Cardinal. On August 30, 2007, Cardinal provided written notice to Carson that Smithville was in default of its obligations. Cardinal alleged that the amount owed at that time was $272,795.08. On November 8, 2007, Cardinal again demanded payment, in writing. The November 8, 2007, letter reminded Carson that he was a guarantor of Smithville's obligations, and alleged that the amount owed at that time was $273,134.40. Cardinal advised that unless arrangements for payment were made by November 23, 2007, legal proceedings would be initiated.

Cardinal filed its complaint on April 7, 2008. On June 2, 2008, after this litigation had

begun, Cardinal sent a letter to Carson and an executive with Pharmacy Management Group, LLC (PMG). Cardinal advised that it was aware that Carson was negotiating with PMG for the purchase of Smithville, and that PMG had requested that Cardinal forbear from proceeding with its lawsuit pending the consummation of the sale of Smithville. Cardinal agreed to forbear from pursuing the lawsuit until July 15, 2008, provided that 1) Smithville agreed and acknowledged that as of June 2, 2008, it owed Cardinal $271,979.59; and 2) in the event the sale of Smithville to PMG was consummated, Smithville and PMG agreed to immediately pay Cardinal the outstanding balance. Cardinal asked that representatives of both Smithville and PMG sign and return the letter as an acknowledgment of the agreement. Carson, Carson's wife, and representatives from PMG signed the letter and returned it to Cardinal.

## II. STANDARD OF REVIEW

Upon consideration of a motion for summary judgment, the movant has the initial burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) ("the burden on the moving party may be discharged by 'showing'... that there is an absence of evidence to support the nonmoving party's case"). The burden then shifts to the nonmovant to "go beyond the pleadings and by... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " Celotex Corp., 477 U.S. at 324 (citing FED. R. CIV. P. 56(c), (e)). The burden is not discharged by "mere allegations or denials." FED. R. CIV. P. 56(e). "An issue of material fact is genuine if a reasonable jury could return a verdict for the nonmovant." Agnew v. Washington Mut. Fin. Group, LLC, 244 F. Supp. 2d 672, 675 (N.D. Miss. 2003) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)).

Rule 56(c) mandates the entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322. Before finding that no genuine issue for trial exists, the court must first be satisfied that no reasonable trier of fact could find for the nonmovant. Matsushita Elec. Indus. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). However, the court is not to weigh the evidence or engage in credibility determinations. Anderson, 477 U.S. at 249. All legitimate factual inferences must be made in favor of the nonmovant. Anderson, 477 U.S. at 255.

### III. ANALYSIS

Cardinal argues that the evidence establishes that Smithville owes $127,372.72 in principal, on an open account, to Cardinal 113, and that Smithville owes $145,422.36 in principal, on an open account, to Cardinal 110. Cardinal also argues that Carson breached his personal guaranty of Smithville's debt.

In response, Smithville and Carson argue that summary judgment in favor of Cardinal would be improper because a genuine issue of material fact exists as to the amount of damages that may be owed. Smithville and Carson allege that they are owed certain credits and rebates that the Plaintiffs have failed or refused to apply to the account balance.

*A.    The Open Account Claim Against Smithville*

The Mississippi Supreme Court has defined an "open account" as "an account based on continuing transactions between the parties which have not closed or been settled." Franklin Collection Serv., Inc. v. Stewart, 863 So.2d 925, 930 (Miss. 2003). An open account has also been described as "a type of credit extended through an advance agreement by a seller to a buyer which

4

permits the buyer to make purchases without a note of security... based on an evaluation of the buyer's credit." Cox v. Weil, 619 So. 2d 908, 914 (Miss. 1993) (citing Stanton & Assocs., Inc. v. Bryant Constr. Co., 464 So. 2d 499 (Miss. 1985)).

When determining what constitutes a prima facie open account case, the Mississippi Supreme Court has cited the following quotation from the Iowa Supreme Court with approval:

> It is our conclusion that plaintiff's actual ledger cards showing each entry of debit and credit, the testimony of plaintiff's manager showing the simultaneous business machine posting and invoice billing of the customer, his testimony concerning the correctness of the entries, and his testimony that all materials represented by the entries had been delivered to defendant constitute sufficient evidence to make a prima facie case.

Natchez Elec. & Supply Co., Inc. v. Johnson, 968 So. 2d 358, 360-61 (Miss. 2007) (quoting Prestype, Inc. v. Carr, 248 N.W. 2d 111, 119 (Iowa 1976)); see also UAP Distrib., Inc. v. Selman, 2008 U.S. Dist. LEXIS 27735, *6 (S.D. Miss. Apr. 4, 2008).

Therefore, the Mississippi Supreme Court has employed an open account framework in which, in order to make a prima facie showing, a plaintiff must present detailed account ledgers and offer testimony as to the accuracy of the ledger entries, the temporal relationship between the ledger entries and the actual events they represent, and the delivery of the materials represented by the entries. See Natchez Elec. & Supply Co., Inc., 968 So. 2d at 361 (plaintiff in an open account case made a prima facie case by presenting account ledgers and testimony describing plaintiff's standard business practice with defendant and supporting the accuracy of the ledgers). Once a prima facie case is made on an open account, "the burden of proof shifts to the account debtor to prove that the amount claimed is incorrect." Natchez Elec. & Supply Co., Inc., 968 So. 2d at 360. "Proof that a debt is not correct takes more than unsubstantiated assertions that the debt is not correct." UAP Distrib., Inc., 2008 U.S. Dist. LEXIS 27735 at *6 (citing Natchez Elec. & Supply Co., Inc., 968 So.

2d at 360-64).

Cardinal attached an affidavit of William Byrnes, its Regional Credit Manager, to its motion for summary judgment. Byrnes declared that he was responsible for the custody of Cardinal's records regarding Smithville's accounts and the guaranty executed by Carson, and he stated the same allegations of fact that Cardinal alleged in its complaint (as recited in this court's factual summary above). He attached an account ledger to his affidavit that totals $272,795.08 in principal. The ledger contains entries representing transactions between Smithville and Dohmen totaling $127,372.72, on dates ranging from March 22, 2006, through September 19, 2006. The ledger also contains entries representing transactions between Smithville and Cardinal 110 totaling $145,422.36, on dates ranging from December 5, 2006, through January 15, 2007. Byrnes testified in his affidavit that the entries in the ledger were accurate and reflected charges to Smithville's account based on orders made by Smithville. He further testified that the records were made at or near the time that the events which they represent occurred, and that all the pharmaceutical products ordered by Smithville were delivered.

The Byrnes affidavit and the account ledger submitted by Cardinal Health are sufficient evidence to make a prima facie open account case under Mississippi law. See Natchez Elec. & Supply Co., Inc., 968 So. 2d at 361. Therefore, the burden of proof shifts to the Defendants to prove that the amount claimed is incorrect. Natchez Elec. & Supply Co., Inc., 968 So. 2d at 360.

The Defendants argue that there is a genuine issue of disputed fact as to the principal amount owed by the Defendants. Defendants allege that the Plaintiffs owe them certain credits and rebates which would serve to decrease the account balance. As support for their defense, the Defendants attached their Answer and their discovery responses. In their Answer, Defendants alleged that the

Plaintiffs owe them credits and rebates that were wrongfully disallowed. In their discovery responses, Defendants again alleged that the Plaintiffs owe them certain credits and rebates, and the Defendants further stated that they had previously produced documentary evidence of the alleged credits and rebates to the Plaintiffs. The Defendants did not, however, provide the court with any such documentary evidence.

Despite their allegations that they are due credits and rebates, the Plaintiffs have not specified any details as to how these credits and rebates came about or even as to their amount. Despite their discovery responses that they have produced documentary evidence to the Plaintiffs verifying the credits and rebates, the Plaintiffs have not presented any documentary evidence whatsoever to the court. All the Defendants offer in response to the Plaintiffs' prima facie showing is the bare allegation that the amount claimed by the Plaintiffs is incorrect because the Plaintiffs owe an unspecified amount of unpaid credits and/or rebates. This is insufficient to rebut the evidence presented by the Plaintiffs. To prove a debt is incorrect, one must present this court with "more than unsubstantiated assertions that the debt is not correct." UAP Distrib., Inc., 2008 U.S. Dist. LEXIS 27735 at *6 (citing Natchez Elec. & Supply Co., Inc., 968 So. 2d at 360-64).

Rule 56 states that "[w]hen a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must... set out specific facts showing a genuine issue for trial." FED. R. CIV. P. 56(e)(2). The Defendants have offered no specific facts whatsoever in response to the Plaintiff's prima facie showing. Their bare assertion that the amount of the debt is incorrect is not sufficient to create a genuine issue of disputed material fact. As such, summary judgment in favor of the Plaintiffs as to the open account claim against Smithville is granted, in the principal amount of $272,795.08.

## B. *The Breach of Contract Claim Against Carson*

"The elements of a breach of contract are: (1) the existence of a valid and binding contract; (2) that the defendant has broken, or breached it; and (3) that the plaintiff has been thereby damaged monetarily." Favre Prop. Mgmt., LLC v. Cinque Bambini, 863 So. 2d 1037, 1044 (Miss. Ct. App. 2004) (citing Warwick v. Matheney, 603 So. 2d 330, 336 (Miss. 1992)). The March 17, 2007, personal guaranty agreement, the affidavit of William Byrnes, and the account ledger presented by the Plaintiffs with their motion for summary judgment make a prima facie case on their breach of contract claim against Defendant Carson. The personal guarantee agreement establishes the existence of a valid and binding contract, and the affidavit and account ledger establish that the contract was breached to the monetary detriment of the Plaintiffs.

The Defendants do not challenge the validity of the personal guaranty contract; the only defense raised by the Defendants is the same defense addressed above - allegations concerning credits and rebates owed to them by the Plaintiffs. For the same reasons stated above, the bare allegation that the Plaintiffs owe the Defendants credits and rebates - without any specific factual support or documentary evidence - is insufficient to create a genuine issue of disputed material fact. Regardless, a dispute as to the amount of the debt would have no bearing on whether Carson was personally liable for the debt according to the terms of the personal guaranty agreement he struck with Cardinal. Therefore, the Plaintiffs' motion for summary judgment against Defendant Carson is granted, and the court holds that, according to the terms of the personal guaranty agreement of March 17, 2007, he is personally liable for the principal amount that Smithville owes to Cardinal.

## IV. CONCLUSION

Therefore, since there is no genuine issue of disputed material fact, summary judgment in

favor of the Plaintiffs against Smithville is **GRANTED** in the principal amount of $272,795.08. Further, summary judgment in favor of the Plaintiffs against Carson is **GRANTED**, and the court holds that Carson is personally liable for the open account obligations of Smithville, according to the terms of the personal guaranty agreement of March 17, 2007.

Because the parties have not sufficiently addressed the issues of interest and attorney's fees in their briefs on the motion for summary judgment, the court will not rule on the Plaintiff's request for interest and fees at this time. The Plaintiffs shall submit a detailed accounting of interest accrued and of attorney's fees incurred, and a brief in support of their demand thereof within ten (10) days of the entry of this opinion and its corresponding order. The Defendants shall respond within ten (10) days after the filing thereof.

A separate order consistent with this opinion will issue on this the 8th day of May, 2009.

                                          **/s/ Sharion Aycock**
                                          **UNITED STATES DISTRICT JUDGE**